## NETTLES v. MARCO.

1. In suit against a stockholder for his unpaid subscription of stock, he should be allowed credit for his subsequent advances to the corporation, even though not credited on his subscription account on the books of the company.
2. After the organization of a tramway corporation and the full payment of the minimum amount of stock as provided by the charter, a stockholder, under a resolution to extend the road, and for that purpose, signed an agreement to increase his stock subscription, payable partly in lumber and partly in money. He accordingly advanced more than the amount payable in money, and also made other advances; after which the directors abandoned the proposed extension, released such

---

[1] Bish. Stat. Crimes, § 1013; *Murphy* v. *State*, 1 Ind., 366; *State* v. *Kirkham*, 1 Ired., 384.

stockholder from his agreement, and recognized the advances so made as a debt; and this debt was subsequently reduced to judgment. *Held,* that the action of the board of directors was legal, and that a receiver of the corporation was not entitled to recover any part of the subscription so conditionally made after the organization of the company, and after the debts of the company had been contracted.

3. Where one subscribes stock payable in lumber to a corporation, already fully organized, it seems that no judgment for money should be had against such subscriber—at least until it is shown that he had failed to comply with his contract, according to its terms, after reasonable opportunity so to do.

Before PRESSLEY, J., Darlington, March, 1889.

This was an action by C. S. Nettles, as receiver of "The Timmonsville & Lydia Tram or Railroad Company," against Manuel Marco, commenced September 22, 1885. The opinion states the case.

*Messrs. Boyd & Brown,* for appellant.

*Mr. B. W. Edwards,* contra.

May 12, 1890. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Upon the petition of a number of citizens under the general law, they were made a body politic— the "Timmonsville and Lydia Tram or Railroad Company." On December 24, 1883, their charter was amended by an act of legislature (18 Stat., 599), which gave them the right to build a rail or tram road "from the town of Timmonsville, on the line of the Wilmington, C. & A. Railroad, in as direct a route as practicable and convenient, to the village of Lydia, in the County of Darlington, with the privilege of extending the same to a point at or near Stokes' Bridge," &c. The capital stock of said company was not at any time to exceed $50,000, nor be less than $5,000.

Over the minimum limit, $5,000, was subscribed, of which the defendant, Marco, paid $1,500, and the work was commenced. It was found, however, that more money was needed to complete the road to Lydia. At this juncture Mr. J. L. Coker, a gentle-

man of means and high character, who lived at Hartsville in Darlington County, which was beyond Lydia, but not in the line of the contemplated extension of the road to Stokes' Bridge, appeared at a meeting of the stockholders of the company (April 30, 1884), and suggested a change of the route by extending the road from Lydia to Hartsville. His views seem to have impressed the stockholders favorably; he was on that day elected a director of the company, and the stockholders resolved "to extend the road to Hartsville, provided the directors deem it to the interest of the road," &c.

At a meeting of the directors (June 18, 1884), an effort was made to raise the additional amount of money which would be necessary to finish the road to Lydia, which a committee appointed for that purpose estimated to be about $3,500. Marco was urged to furnish the money, but having already paid his original subscription of $1,500, he declared his inability to do so. Coker offered, in case the road was finished to Lydia, to take charge of it from that point, and supply subscriptions sufficient to continue it to Hartsville; and also that if Marco, the defendant, was forced to borrow the money, he would, when called upon, loan him on paper not payable in bank what he might need. · Thus urged, Marco signed the agreement as to the $3,500, which was written by Coker. Marco then called on Coker to put in writing his part of the agreement, but Coker saying that it was unnecessary, as the board knew that his word was as good as his bond, it was not further insisted on. The agreement signed by Marco was in the following words: "I agree to subscribe to the T. & Lydia Railroad Company $3,500 additional, that is, making my total subscription up to $5,000, provided I be allowed to pay $2,000 of the same in lumber at $10 per thousand feet for good merchantable lumber, and have time until January next to pay $1,500 in cash."

Afterwards Coker seemed to lose faith in the enterprise. Marco, failing to get the money promised by Coker, advanced for the company, or paid upon the aforesaid agreement, $3,070.23, and still the road was not finished to Lydia. Under these circumstance the directors, to whom had been entrusted the whole matter of going to Hartsville, at a meeting on November 30, 1884,

4—33

abandoned the contemplated route to Hartsville, and released Marco from his agreement to furnish the $3,500, upon the ground that in their judgment the consideration for it had failed. In the meantime, and before Marco's new agreement as to the $3,-500, the company, in the view of going to Hartsville, had contracted two debts for cross-ties, lumber, &c. One note, January 1, 1884, sued to judgment, James L. Coker *v.* The Company for $213.20; and another note, March 3, 1884, sued to judgment, Darlington Bank *v.* Company, for $274.54—both judgments entered March 20, 1885; and on the same day was entered a judgment in favor of Marco for the advances before referred to—$3,-070.23. Executions in the two first cases were issued and returned "unsatisfied."

The president of the company having been examined on supplementary proceeding. Judge Hudson appointed the plaintiff receiver of the company, with authority to sue Marco or any other person, for the recovery of whatever might be in their hands due the company, for the benefit of the plaintiff (J. L. Coker) in the above stated judgments. Under this authority the action was brought by the receiver against Marco to recover the whole sum of $3,500, in the view that he was a regular subscriber to the capital stock of the company in default to the extent stated, and that no part of it had been paid by advances or otherwise. The defendant answered, denying the allegation of the plaintiff, "that the said defendant is due the said amount of $3,500 on account of his said subscription to the capital stock of said railroad company, which the plaintiff is entitled to recover. He denied each and every allegation contained in the portions of paragraphs 2 and 4 above quoted," &c.

The issues were referred to T. H. Spain, as special referee, who took the testimony, which is in the Brief, showing the facts to be as hereinbefore stated. In making his report, however, he disregarded all the parol testimony, saying: "The oral testimony showing the subscription was made by Marco on certain conditions with one J. L. Coker ruled out as inadmissible. 24 S. C., 124. The testimony showing that directors released Marco ruled out as inadmissible—release not pleaded. Pom. Rem., section 659; 20 S. C., 521. Granting the admissibility of the evidence

showing release, the release would be void, as it was without consideration and a fraud on the rights of creditors. Subscribed capital stock of a corporation is a fund held by it in trust for its creditors," &c.

Upon exceptions to this report the case was heard by Judge Pressley, who decided that there was nothing in the testimony to justify the defence set up; and further, that defendant was not released from his subscription of $3,500 by the act of the directors of the company in so resolving. He held that the resolution was a nullity; but that the defendant must have credit upon his subscription for the $3,070.23, which was paid by Marco, and by the same resolution was attempted to be converted into a debt against the company, the whole transaction being void, &c., and he adjudged that the plaintiff have judgment for the balance, $429.75 and interest. Both parties appealed.

DEFENDANT'S EXCEPTIONS. "1. That his honor erred in holding that there was nothing in the testimony to justify the defence set up by the defendant. 2. It being an undisputed fact that Marco's subscription was upon the consideration and condition that the road should be extended to Hartsville, the subsequent abandonment of this purpose and route entitled him to release from his subscription, and it was error not to so hold. 3. His honor erred in holding that the resolution of the board of directors releasing Marco from his subscription was a nullity, and did not release Marco from his said subscription. 4. The defendant construes the judgment of his honor as sustaining so much of the defendant's exceptions to the report of the referee as complain of his holding the testimony as to the circumstances and conditions under which Marco subscribed, and as to the action of the board in respect to his release therefrom, inadmissible. If said exceptions are not to be regarded as sustained, then the defendant excepts further that the said testimony was admissible, and it was error not to so hold."

The plaintiff excepted to the decree because it "allowed credit to Manuel Marco on his subscription sued for, reversing the finding of the referee in that respect." We will first dispose of this exception. As we understand it, this is a proceeding on the equity side of the court by the receiver of an insolvent railroad corpora-

tion, to recover for the benefit of creditors of the corporation $3,500, alleged to be due by the defendant as a defaulting stockholder of the company. We think the Circuit Judge considered the whole testimony. The character of the issue made it admissible. If the view of the plaintiff is correct—that the new agreement of the defendant on June 18, 1884, made him a regular unconditional stockholder for all purposes, and bound him to pay the whole of the $3,500 in money, we are unable to see upon what principle of equity the defendant should be excluded from getting credit for the amount of money subsequently advanced by him for the company. In any view which can be taken of the case, we agree with the Circuit Judge, "that the defendant must have credit for $3,070.23 paid for the company."

But the defendant also appeals, and denies that he owes the company anything, but, on the contrary, alleges that the company is largely indebted to him; that he paid in full his original subscription of $1,500; that the new agreement with the directors (on June 18, 1884) was really not an unconditional subscription to the capital stock of the company, but a special contract with the directors to furnish $1,500 in cash, and lumber in value to the amount of $2,000, with special reference to the contemplated extension of the road to Hartsville, which project, for the reasons stated, was afterwards abandoned; and that, in equity and good conscience, he was entitled to be relieved, and accordingly the directors (on November 20, 1884) legally and properly released him. The question, then, to be determined is substantially this—whether Marco, notwithstanding the release, is a debtor to the company for the balance of $3,500, after deducting the advances, $3,070.23, so that they may collect that balance from him in money. If he is so indebted, we think the receiver, as plaintiff, has an equitable right to subject that debt to the payment of the judgments against the company. If the defendant, Marco, is not so indebted, then we think the decree against him requiring him to pay the balance was *erroneous.*

Could the company now recover in money that balance from the defendant ? Without repeating all the circumstances, the directors of the company, under the facts, released the defendant from his engagement, and the question is, whether they had the

power to do so legally and effectually. The law is properly watchful in guarding against the corrupt or improper release or disposal of the capital stock of incorporated companies. The doctrine is well stated by Mr. Justice Strong in the case of *Burke* v. *Smith*, 16 Wall., 395 : "It has been settled by numerous decisions that the directors of a company are incompetent to release an original subscriber to its capital stock, by which the company, its creditors, or the State shall lose any of the benefit of his subscription. Every such arrangement is regarded in equity not only as *ultra vires*, but as a fraud upon other stockholders, upon the public, and upon the creditors of the company." In the same case it is stated that the reasons are obvious and commend themselves to universal approval. "When a company is incorporated and the law provides that a certain amount of stock shall be subscribed before corporate powers shall be exercised, if subscriptions obtained before the organization was effected may be subsequently rendered unavailable by conditions attached to them, the substantial requirements of the laws are defeated. The purpose of such requirements is, that the State may be assured of the successful prosecution of the work, and that creditors of the company may have, to the extent at least of the required subscription, the means of obtaining satisfaction of their claims," &c.

In *Flagg* v. *Manhattan R. R. Co.* (10 Fed. Rep., 413), Mr. Justice Blatchford said : "The question is not one of power, but of good faith. If in good faith, the discretion and judgment of the directors of the Metropolitan were fairly exercised under the circumstances in which the affairs of the corporation were at the time, * * * no court will undertake to interfere with the exercise of such discretion and judgment, even though on the same facts it might have arrived or may arrive at a different conclusion," &c.

Are these principles applicable to the facts of this case ? Here there is not the slightest intimation of collusion, fraud, or bad faith. The directors simply acted as they thought just and right. Over $5,000 of the original capital stock required by the charter had been paid—Marco paying his subscription of $1,500. The work was nearly ended, when the stockholders determined to

change the route of the road, so as to go to Hartsville, "provided the directors deem it to the interest of the road." Thus charged with the whole matter, the directors at first determined in favor of the change, and in that view and for that purpose alone induced Marco to sign the additional agreement to furnish $3,500, part in cash and part in lumber, to finish the road to Lydia. Accordingly he proceeded to make advances, supplies, &c., for that purpose ; but afterwards, for the reasons stated, the contemplated change in the route was abandoned, and Marco was released from his agreement. Considering all the facts and circumstances, it is difficult to resist the conclusion that the agreement of Marco to furnish the $3,500 (part in lumber and part in cash) was in the nature of a special contract between him and the directors, acting under the full authority given them in reference to the Hartsville extension, and that, when such extension was abandoned, they would naturally and justly conclude that Marco should be released from the agreement based thereon ; especially as such release did not in the slightest degree diminish the original capital stock of the company required by the charter, but left it precisely as it stood when Marco was induced to make the new agreement. This was certainly true as to all obligations of the company (including the judgments of Coker) which had been incurred, not on the faith of the new arrangement by the directors, but before there was any idea of going to Hartsville, or the new arrangement was made on June 18, 1884. See *Hill* v. *Silvey*, 81 Ga., 500; 8 S. E. Rep., 808, and authorities.

It is true that the phraseology of the agreement signed by Marco in June, 1884, is that the $3,500 indicated were "additional—making my total subscription up to $5,000;" but it will be observed that immediately after it provides that Marco shall be allowed to pay $2,000 of the amount in lumber upon certain terms. That itself distinctly marks it as a special agreement, and distinguishes it from original capital stock. Besides, in connection with our construction of the supplemental agreement, we may remark, that by its express terms Marco reserved the right, except as to $1,500, to pay in lumber upon certain terms. We have just held that he did substantially advance more than $3,000 on the agreement. It appears in the evidence that more than

$1,500 of the sum was paid in cash, by accepting drafts, &c., so that, even in the view of the plaintiff, it seems to us that Marco had the right to pay the whole balance in lumber, which could not be recovered from him in money—at least, until it was shown that he had been afforded a reasonable opportunity to do so, and failed to perform the contract according to its express terms, which was not done. This may have been taken into consideration in granting the release. "It is said that subscriptions made to the capital stock of a corporation before its organization, must always be payable in money only. But after the organization the company may stipulate with the subscriber for payment in any other mode, and can only enforce the contract according to its terms; and the act of the president of the company in accepting conditional stipulations is binding upon the company." 1 *Red. R. R.*, ¶ 3 of § 58; *Pittsburg & Connellsville R. R. Co.* v. *Stewart*, 41 Penn. St., 54; and *Hinton* v. *Morris County Corporative Society*, 21 Kan., 663. In the case of Stewart the court says: "Nor was the court in error in refusing to charge that the payment by the defendant of $375, after the special contract with the company through General Larimer, estopped him from setting up that contract as a defence against a claim for the payment of the whole subscription in cash. It was not paid in answer to any call, for no call had then been made. At most, then, the payment was only an act to which he was not compellable if the contract was proved. The plaintiff lost nothing by the payment, and it could not therefore work an estoppel. The defendant might have paid all in cross-ties. He paid some when not called for in money, but did not thereby assume an obligation thus to pay all," &c.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.